## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| SANDRA KLUESSENDORF, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEADWAY TECHNOLOGIES, INC., HUTCHINSON TECHNOLOGY INC., MAGNECOMP PRECISION TECHNOLOGY CO. LTD., NAT PERIPHERAL (DONG GUAN) CO., LTD., NAT PERIPHERAL (H.K.) CO., LTD., NHK SPRING CO. LTD., NHK INTERNATIONAL CORPORATION, NHK SPRING (THAILAND) CO., LTD., NHK SPRING PRECISION (GUANGZHOU) CO., LTD., SAE MAGNETICS (H.K.) LTD., AND TDK CORPORATION, | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, on behalf of herself and all others similarly situated (the "Classes" as defined below), upon personal knowledge as to the facts pertaining to herself and upon information and belief as to all other matters, based on the investigation of counsel, brings this class action against Defendants Headway Technologies, Inc., Hutchinson Technology Inc., Magnecomp Precision Technology Public Co. Ltd., NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (H.K.) Co., Ltd.,

NHK Spring Co. Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NHK Spring Precision (Guangzhou) Co., Ltd., SAE Magnetics (H.K.) Ltd., and TDK Corporation for damages, injunctive relief and other relief pursuant to federal antitrust laws, state antitrust, unfair competition, consumer protection laws, and the laws of unjust enrichment, demands a trial by jury, and allege as follows:

## NATURE OF THE ACTION

1.    Plaintiff brings this lawsuit as a result of a long-running global conspiracy beginning no later than May 2008 through such time as the anticompetitive effects of Defendants' conduct ceased (the "Class Period").  During at least this time, Defendants and their co-conspirators knowingly entered into a conspiracy to fix prices of and allocate market shares for hard disk drive ("HDD") suspension assemblies.

2.    Pursuant to this lawsuit, Plaintiff seeks to represent Classes of all persons and entities who, from May 2008 through such time as the anticompetitive effects of Defendants' conduct ceased, indirectly purchased a product not for resale, which included as a component part one or more HDD suspension assemblies that were manufactured or sold by Defendants, any current or former subsidiary of Defendants, or any co-conspirator of Defendants.

3.     HDD suspension assemblies are a component of hard disk drives, which are used to store information electronically and may be incorporated into computers, gaming systems, printers, and copy machines or sold as stand-alone electronic storage devices.  HDDs use magnetic recording heads to read from and write onto rapidly spinning disks.  HDD suspension assemblies hold the recording heads close to the disks and provide the electrical connection from the recording heads to the hard disk drives' circuitry.

4.     In July of 2016, the Japanese Fair Trade Commission ("JFTC") raided Defendants TDK and NHK (or certain of their subsidiaries) based on suspected coordinated price fixing activity by the two companies for HDD suspension components.   On February 9, 2018, the JFTC issued a cease and desist order and surcharge payments orders to Defendants TDK and NHK.  The JFTC found that TDK and NHK substantially restrained competition in the HDD suspension assemblies market by agreeing to maintain sales prices.[1]

5.     Around the same time the JFTC raided Defendants, the U.S. Department of Justice ("DOJ") was conducting its own investigation regarding HDD suspension assemblies.   On July 26, 2016, Defendant Hutchinson Technology, Inc. received a letter from the DOJ stating that it had opened an

---

[1] https://www.jftc.go.jp/en/pressreleases/yearly-2018/February/180209.html

investigation relating to the sale of suspension assemblies for use in HDDs.[2]

6.     The JFTC and DOJ were not alone in investigating price fixing in the HDD suspension assemblies market.  In April 2018, Brazilian antitrust authorities launched an investigation into allegations that Defendant TDK and four other companies colluded from 2003 to May 2016 to fix prices of HDD suspension assemblies.  The international cartel allegedly shared data and allocated customers to maintain artificially high prices on HDD suspension assemblies used in hard disk drives.

7.     On July 29, 2019, the DOJ issued a press release announcing that Defendant NHK has agreed to plead guilty, pay a $28.5 million criminal fine, and cooperate in the ongoing investigation of the global conspiracy to fix prices of HDD suspension assemblies.[3]

8.     Throughout the Class Period, Defendants were the leading manufactures and sellers of HDD suspension assemblies in the United States. In fact, as of 2016, Defendants held a combined worldwide market share of approximately 90%.

9.     Beginning as early as May 2008 and continuing until at least April

---

[2] https://www.competitionpolicyinternational.com/us-hutchinson-cooperating-with-doj-with-hard-drive-investigation/
[3] https://www.justice.gov/opa/pr/japanese-manufacturer-agrees-plead-guilty-fixing-prices-suspension-assemblies-used-hard-disk

2016, Defendants and their co-conspirators contracted, combined, or conspired to fix, raise, maintain, and/or stabilize prices of and allocate market shares for HDD suspension assemblies in the United States.[4]  Defendants and their co-conspirators participated in a combination and conspiracy to suppress and eliminate competition for HDD suspension assemblies by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of HDD suspension assemblies sold in the United States and elsewhere.  The combination and conspiracy engaged in by Defendants and their co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, and state antitrust, unfair competition, consumer protection laws, and the common law of unjust enrichment.

10.    As a direct result of the anticompetitive and unlawful conduct alleged herein, Plaintiff and the Classes paid artificially inflated prices for HDD suspension assemblies during the Class Period and have thereby suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

11.    Plaintiff brings this action under Section 16 of the Clayton Act (15U.S.C. § 26) to secure equitable and injunctive relief against Defendants for

---

[4] Information, *United States of America v. NHK Spring Co., Ltd*, 2:19-CR-20503 (e.d. Mich. Jul. 29, 2019), ECF No. 1 ("NHK Information").

violating Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1). Plaintiff also asserts claims for actual and exemplary damages pursuant to state antitrust, unfair competition, consumer protection and unjust enrichment laws, and seeks to obtain restitution, recover damages and secure other relief against Defendants for violations of those state laws. Plaintiff and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

12.    This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1), and Title 28, United States Code, Sections 1331 and 1337.  This Court has subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and there are members of the proposed Classes who are citizens of a different state than some Defendants.

13.    Venue is proper in this District under 15 U.S.C. § 22 and 28 U.S.C. 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more of Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this District.

14. This Court has *in personam* jurisdiction over Defendants because each, either directly or through the ownership and/or control of its subsidiaries, *inter alia*: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of HDD suspension assemblies throughout the United States as a whole, including in this District; (c) had substantial aggregate contacts with the United States, including in this District; or (d) engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District. Defendants also conduct business throughout the United States, including in this District, and they have purposefully availed themselves of the laws of the United States.

15. Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial, and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

16. The activities of Defendants and their co-conspirators were within the flow of, and were intended to and did have a substantial effect on interstate commerce of the United States. Defendants' products are sold in the flow of interstate commerce.

17.     HDD suspension assemblies manufactured abroad by Defendants and sold for use in products in the United States are goods brought into the United States for sale, and therefore constitute import commerce. To the extent any HDD suspension assemblies are purchased in the United States, and such HDD suspension assemblies do not constitute import commerce, Defendants' activities with respect thereto, as more fully alleged herein during the Class Period, had, and continue to have, a direct, substantial and reasonably foreseeable effect on United States commerce. The anticompetitive conduct, and its effect on United States commerce described herein, proximately caused antitrust injury in the United States.

18.     By reason of the unlawful activities hereinafter alleged, Defendants' unlawful activities substantially affected commerce throughout the United States, causing injury to Plaintiff and members of the Classes.  Defendants, directly and through their agents, engaged in activities affecting all states, to fix, raise, maintain and/or stabilize prices, and allocate the market and customers in the United States for HDD suspension assemblies, which conspiracy unreasonably restrained trade and adversely affected the market for HDD suspension assemblies.

19.     Defendants' conspiracy and wrongdoing described herein adversely affected persons in the United States who purchased a product in the United States

not for resale which included an HDD suspension assembly.

## THE PARTIES

20.    Plaintiff Sandra Kluessendorf is a resident of St. Paul Park, Minnesota. During the Class Period, Ms. Kluessendorf purchased at least one HDD suspension assembly indirectly from at least one Defendant and was injured in her business or property as a result of Defendants' unlawful conduct alleged herein.

### TDK Defendants

21.    Defendant TDK Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan. TDK Corporation – directly and/or through its affiliates, which it wholly owned and/or controlled – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

22.    Defendant Magnecomp Precision Technology Public Co. Ltd. is a Thai corporation with its principal place of business in Ayutthaya, Thailand. It is an affiliate of and wholly controlled by TDK Corporation. Defendant Magnecomp – directly and/or through its affiliates – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

23.    Defendant SAE Magnetics (H.K.) Ltd. is a Chinese corporation with

its principal place of business in Hong Kong, China. Defendant SAE Magnetics – directly and/or through its affiliates – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

24.    Defendant Hutchinson Technology Inc. is a Minnesota corporation with its principal place of business in Hutchinson, Minnesota. TDK Corporation acquired Hutchinson Technology Inc. on October 6, 2016.  It is an affiliate of and wholly controlled by TDK Corporation. Hutchinson Technology Inc. – directly and/or through its affiliates – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

25.    Defendant Headway Technologies, Inc. is a Delaware corporation with its principal place of business in Milpitas, California. It is an affiliate of and wholly controlled by TDK Corporation. Defendant Headway Technologies – directly and/or through its affiliates – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

**NHK Defendants**

26.    Defendant NHK Spring Co., Ltd. is a Japanese corporation with its

principal place of business in Yokohama, Japan. NHK Spring Co., Ltd. – directly and/or through its affiliates, which it wholly owned and/or controlled – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

27.    Defendant NHK International Corporation is a Michigan corporation with its principal place of business in Novi, Michigan. It is an affiliate of and wholly controlled by NHK Spring Co., Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

28.    Defendant NHK Spring (Thailand) Co., Ltd. is a Thai corporation with its principal place of business in Samutprakarn, Thailand. It is an affiliate of and wholly controlled by NHK Spring Co., Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

29.    Defendant NHK Spring Precision (Guangzhou) Co., Ltd. is a Chinese corporation with its principal place of business in Guangzhou, China. It is an

affiliate of and wholly controlled by NHK Spring Co., Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

30.    Defendant NAT Peripheral (Dong Guan) Co., Ltd. ("NAT Dong Guan") is a Chinese corporation with its principal place of business in Guangdong, China. It is an affiliate of and wholly controlled by NHK Spring Co., Ltd. – Defendant Nat Dong Guan directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

31.    Defendant NAT Peripheral (H.K.) Co., Ltd. ("NAT H.K.") is a Chinese corporation with its principal place of business in Hong Kong, China. It is an affiliate of and wholly controlled by NHK Spring Co., Ltd. – Defendant NAT H.K. directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

## AGENTS AND CO-CONSPIRATORS

32.   Various individuals, partnerships, corporations and associations not named as Defendants in this Complaint (the "co-conspirators") have participated in the violations of the laws alleged herein and for which Plaintiff seeks relief, and have performed acts and made statements in furtherance of the conspiracy. Plaintiff reserves the right to name some or all of these persons as defendants at a later date.

33.   The acts charged in this Complaint have been done by Defendants or were ordered or done by Defendants' officers, agents, employees, or representatives, while actively engaged in the management of Defendants' affairs

34.   Whenever in this Complaint reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

35.   Each Defendant or co-conspirator named herein acted as the principal, agent, or joint venture of, or for, the other Defendants and co-conspirators with respect to the acts, violations, and common course of conduct alleged herein. Each Defendant and co-conspirator which is a subsidiary of a foreign parent acts

as the United States agent for HDD suspension assemblies made by its parent company.

## INTERSTATE TRADE AND COMMERCE

36.    The conduct of Defendants and their co-conspirators has taken place in, and affected the continuous flow of interstate trade and commerce of the United States in that, *inter alia*:

   a.    During the Class Period, Defendants and their co-conspirators sold and distributed HDD suspension assemblies throughout the United States;

   b.    Defendants and their co-conspirators have each used instrumentalities of interstate commerce to manufacture, sell, distribute, and/or market HDD suspension assemblies throughout the United States;

   c.    Defendants and their co-conspirators manufactured, sold, and shipped substantial quantities of HDD suspension assemblies in a continuous and uninterrupted flow of interstate commerce to customers; and

   d.    The conspiracy alleged herein affected billions of dollars of commerce. During the Class Period, Defendants collectively

14

controlled approximately 90% of the global HDD suspension parts market. Defendants and their co-conspirators have inflicted antitrust injury by artificially raising prices paid by Plaintiff and other entities who are themselves engaged in commerce.

## FACTUAL ALLEGATIONS

### A.    HDD and HDD Suspension Assemblies

37.    An HDD is a non-volatile[5] computer storage device containing magnetic disks or platters rotating at high speeds.[6] HDDs are installed in a variety of electronic products including computers, copy machines, and gaming systems.

38.    HDDs are comprised of, among other things, magnetic disks, heads and a motor (*see* Figure 1).  HDD suspension assemblies (*see* Figure 2) position the read/write heads above the data on the surface of the spinning disks in the HDD helping to track follow while maintaining a consistent flying height.[7]  The accuracy of this positioning over the tracks on the disk is a large determinant of areal density and subsequently each disk's data capacity. The suspension has a built-in actuator that is controlled to hold the head within a very small tolerance

---

[5] "Non-volatile" means that the data is retained when power is turned off.
[6] https://www.techopedia.com/definition/5288/hard-disk-drive
[7] https://www.magnecomp.com/Education/edu?view=01

of the centerline of the data track.[8]

39.   In addition, while the head is held on track in the plane of the disk some intended movement of the head in a direction perpendicular to the surface of the disk is allowed in response to undulations and irregularities in the disk's surface and in response to shock events such as might occur.  However, it is the suspension's role to maintain the position of the head within a safe range during these periods to keep it from hitting the disk's surface thus preventing damage which could result in what is commonly known as a "head crash" that destroys the information stored on the disk.[9]

40.   Thus, HDD suspension assemblies are essential to the reliability and performance of HDDs.

---

[8] *Id.*
[9] *Id.*

## Figure 1: HDD[10]



**Figure 2: HDD Suspension Assmbely**[11]



41.    Defendants manufacture and sell HDD suspension assemblies in the United States and elsewhere to companies that install HDD suspension assemblies into HDDs. Consumers then purchase HDDs as either stand-alone products, or as part of larger systems, such as computers.  In 2018, global unit shipments of HDDs were nearly 400 million,[12] and are predicted to increase in the coming years.[13]

**B.    Defendants Have Been Investigated for Price Fixing of HDD Assemblies in Several Countries**

---

[11] https://link.springer.com/referenceworkentry/10.1007%2F978-9-387-92897-5_1140
[12] https://www.statista.com/statistics/398951/global-shipment-figures-for-hard-disk-drives/ (last visited Aug. 1, 2019).
[13] *See Id.*

42.   In July of 2016, the JFTC raided Defendants TDK and NHK (or certain of their subsidiaries) based on suspected coordinated price fixing activity by the two companies for HDD suspension assemblies.   On February 9, 2018, the JFTC issued a cease and desist order and surcharge payments orders to Defendants TDK and NHK.  The JFTC found that the two companies substantially restrained competition in the HDD suspension assemblies market by agreeing to maintain sales prices.[14]

43.   Soon after the JFTC raided Defendants, it became apparent that the DOJ was conducting its own investigation regarding HDD assemblies.  On July 26, 2016, Defendant Hutchinson Technology, Inc. received a letter from the DOJ stating that it had opened an investigation relating to the sale of suspension assemblies for use in HDDs.[15]

44.   The JFTC and DOJ were not alone in investigating price fixing of HDD assemblies.   On April 26, 2018, Brazil's Administrative Council for Economic Defense ("CADE") announced it had uncovered evidence that Defendant TDK and four other companies colluded from 2003 to May 2016 to fix prices of HDD suspension assemblies.  The international cartel allegedly shared data and allocated customers to maintain artificially high prices on HDD

---

[14] https://www.jftc.go.jp/en/pressreleases/yearly-2018/February/180209.html
[15] https://www.competitionpolicyinternational.com/us-hutchinson-cooperating-with-doj-with-hard-drive-investigation/

suspension assemblies used in hard disks.[16]

> **C.    Defendant NHK Has Agreed to Plead Guilty for its Role in a Global Conspiracy to Fix Prices of HDD Assemblies**

45.   On July 29, 2019, the DOJ issued a press release announcing that Defendant NHK had agreed to plead guilty, pay a $28.5 million criminal fine, and cooperate in the ongoing investigation of the global conspiracy to fix prices of HDD suspension assemblies.[17]

46.   Assistant Attorney General Makan Delrahim of the Antitrust Division notes that, "[w]hile these parts are physically small, they are critical to the operation and performance of electronic devices, and their impact on American consumers and businesses is direct and substantial."[18]

47.   Special Agent in Charge Scott Pierce added that, "[a]ctivities related to illegal price-fixing and market allocation do not promote an environment conducive to open competition.  When this occurs, the consumer is not guaranteed the best products at the lowest prices."[19]

48.   As described in the criminal Information, Defendant NHK Spring Co., Ltd., from at least May 2008 and continuing until at least April 2016, engaged in

---

[16] https://www.law360.com/articles/1038188/brazil-says-5-cos-may-have-fixed-prices-for-hard-disk-parts
[17] https://www.justice.gov/opa/pr/japanese-manufacturer-agrees-plead-guilty-fixing-prices-suspension-assemblies-used-hard-disk
[18] Id.
[19] Id.

a combination and conspiracy consisting of a continuing agreement, understanding, and concert of action among Defendant NHK and its co-conspirators to refrain from competing on prices for, fix the prices of, and allocate their respective market shares for HDD suspension assemblies to be sold in the United States and elsewhere.[20]

49.    As is detailed in the Information, Defendant NHK Spring Co., Ltd. and its co- conspirators effectuated their conspiracy by, among other things:

    a.    engaging in discussions and attending meetings during which they reached agreements to refrain from competing on prices for, fix the prices of, and allocate their respective market shares for HDD suspension assemblies sold in the United States and elsewhere;

    b.    exchanging HDD suspension assemblies pricing information, including anticipated pricing quotes;

    c.    relying on their agreements not to compete and using the exchanged pricing information to inform their negotiations with U.S. and foreign customers;

    d.    selling HDD suspension assemblies in, or for delivery to,

---

[20] Information, *United States of America v. NHK Spring Co., Ltd*, 2:19-cr- 20503 (E.D. Mich. Jul. 29, 2019), ECF No. 1 ("NHK Information").

the United States and elsewhere at collusive and noncompetitive prices; and

    e.    accepting payment for HDD suspension assemblies sold in, or for delivery to the United States and elsewhere at collusive and noncompetitive prices.[21]

## D. The Characteristics of the HDD Suspension Assembly Market Render the Conspiracy More Plausible.

50.   Like other electronic product markets that have been the subject of antitrust investigations, the HDD suspension assemblies market has characteristics that make it susceptible to collusion, including high barriers to entry and high market concentration. Together, these characteristics increase the probability and feasibility of anticompetitive conduct in the HDD suspension assemblies market.

### 1. There are High Barriers to Entry in the HDD Suspension Assemblies Market.

51.   A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants to the market seeking to benefit from the supracompetitive pricing. Where, however, there are significant barriers to entry, new entrants are much less likely to enter the market.

---

[21] *Id.*

Thus, barriers to entry help facilitate the formation and maintenance of cartels.

52. This is particularly true here where manufacturing HDD suspension assemblies requires the ability to produce precision assemblies in sufficient volume. As Defendant Hutchinson Technology Inc. conceded, "We believe that the number of entities that have the technical capability and capacity for producing precision suspension assemblies or components in large volumes will remain small."[22]

53. Moreover, increased demand for other types of data storage technology, such as those that utilize flash memory, limit opportunities for new entrants to the HDD suspension assembly market, which caters to hard disk drives.[23]

### 2. The HDD Suspension Assemblies Market is Highly Concentrated.

54. A highly concentrated market is more susceptible to collusion and other anticompetitive practices.

55. As is discussed above, Defendants dominate the HDD suspension assemblies market. As of 2016, Defendants held a combined worldwide market share of approximately 90%.

---

[22] https://www.thestreet.com/story/13412469/1/hutchinson-shares-keep-falling-on-extended-ftc-antitrust-review.html
[23] Id.

56.    Upon information and belief, there were numerous suppliers of HDD suspension assemblies in the 1980s and the market was quite competitive. A process of market consolidation began in the 1990s, however, and by 2002 the market had already become concentrated. Over the past 18 years, this trend has been further aggravated by two factors: (a) further consolidation among HDD suspension assemblies manufacturers, and (b) the vertical integration of companies like TDK that formerly depended on independent component suppliers in their manufacturing of HDDs.

57.    In recent years, market consolidation has continued to the point where globally, there are now only two major suppliers of HDD suspension assemblies: TDK and NHK. For example, TDK acquired a formerly independent HDD suspension assemblies manufacturer in 2007 and had fully integrated that acquisition by 2009.

58.    Hutchinson Technology, at one time the largest manufacturer of HDD suspension assemblies, was acquired by Defendant TDK in 2016. Prior to the acquisition, Hutchinson had gone through its own process of consolidation and was a principal supplier of HDD suspension assemblies to Western Digital Corporation (headquartered in San Jose, CA); Seagate Technology, LLC (Cupertino, CA); and SAE Magnetics, Ltd/TDK Corporation (Tokyo, Japan). That business is now contained within the TDK family.

24

# CLASS ACTION ALLEGATIONS

59.   Plaintiff brings this suit as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of herself and class (the "Nationwide Class") composed of and defined as follows:

> All persons and entities who, during the Class Period, indirectly purchased a product not for resale which included as a component part one or more HDD suspension assemblies that were manufactured or sold by Defendants, any current or former subsidiary of Defendants, or any co-conspirator of Defendants.

60.   Plaintiff also brings this action on behalf of herself and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to state antitrust, unfair competition, and consumer protection laws as well as common law unjust enrichment on behalf herself and class (the "Damages Class") composed of and defined as follows:

> All persons and entities who, during the Class Period, in the Indirect Purchaser States[24] purchased a product not for resale which included as a component part one or more HDD suspension assemblies that were manufactured or sold by Defendants, any current or former subsidiary of Defendants, or any co-conspirator of te Defendants.

61.   The Nationwide Class and the Damages Class are referred to herein as

---

[24] The Indirect Purchaser States are the states listed in the Second and Third Claims for Relief.

the "Classes." Excluded from the Classes are Defendants; the officers, directors or employees of any Defendant; their parent companies, subsidiaries and affiliates; any co-conspirators; federal governmental entities; and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities; and persons who purchased HDD suspension assemblies directly or for resale.

62.   While Plaintiff does not know the exact number of the members of the Classes, Plaintiff believes there are (at least) hundreds of thousands of members in each Class.

63.   Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole.  Such questions of law and fact common to the Classes include, but are not limited to:

  a.   Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of HDD suspension assemblies sold in the United States;

  b.   The identity of the participants of the alleged conspiracy;

26

c.    The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

d.    Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

e.    Whether the alleged conspiracy violated state antitrust, unfair competition, and/or consumer protection laws, as alleged in the Second and Third Claims for Relief;

f.    Whether Defendants unjustly enriched themselves to the detriment of the Plaintiff and the members of the Classes, thereby entitling Plaintiff and the members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Claim for Relief;

g.    Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiff and the members of the Classes;

h.    The effect of the alleged conspiracy on the prices of HDD suspension assemblies sold in the United States during the Class Period;

27

     i.     Whether Plaintiff and the members of the Classes had any reason to know or suspect the conspiracy, or any means to discover the conspiracy;

     j.     Whether Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiff and the members of the Classes;

     k.     The appropriate injunctive and related equitable relief for the Nationwide Class; and

     l.     The appropriate class-wide measure of damages for the Damages Class.

64.  Plaintiff's claims are typical of the claims of the members of the Classes, and Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff and all members of the Classes are similarly affected by Defendants' wrongful conduct in that they paid artificially inflated prices for HDD suspension assemblies purchased indirectly from te Defendants and/or their co-conspirators.

65.  Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.  Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Classes.  Plaintiff is represented by counsel who are competent and experienced

28

in the prosecution of antitrust and class action litigation.

66.   The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

67.   Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

68.   The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## INTERSTATE TRADE AND COMMERCE

69.   The conduct of Defendants and their co-conspirators has taken place in, and affected the continuous flow of interstate trade and commerce of the

United States in that, *inter alia*:

a.     During the Class Period, Defendants and their co-conspirators sold and distributed HDD suspension assemblies throughout the United States;

b.     Defendants and their co-conspirators have each used instrumentalities of interstate commerce to manufacture, sell, distribute, and/or market HDD suspension assemblies throughout the United States;

c.     Defendants and their co-conspirators manufactured, sold, and shipped substantial quantities of HDD suspension assemblies in a continuous and uninterrupted flow of interstate commerce to customers; and

d.     The conspiracy alleged herein affected billions of dollars of commerce. During the Class Period, Defendants collectively controlled approximately 90% of the global HDD suspension parts market. Defendants and their co-conspirators have inflicted antitrust injury by artificially raising prices paid by Plaintiff and other entities who are themselves engaged in commerce.

**PLAINTIFF AND THE CLASSES SUFFERED ANTITRUST INJURY**

70.   Defendants' price-fixing conspiracy had the following effects, among others:

a.    Price competition has been restrained or eliminated with respect to HDD suspension assemblies;

b.    The prices of HDD suspension assemblies have been fixed, raised, maintained, or stabilized at artificially inflated levels;

c.    Indirect purchasers of HDD suspension assemblies have been deprived of free and open competition; and

d.    Indirect purchasers of HDD suspension assemblies paid artificially inflated prices for HDD suspension assemblies.

71.   During the Class Period, Plaintiff and the members of the Classes paid supra-competitive prices for HDD suspension assemblies. HDD manufacturers and other purchasers of HDD suspension assemblies passed on inflated prices to Plaintiff and the members of the Classes. Those overcharges have unjustly enriched Defendants.

72. The markets for HDDs and HDD suspension assemblies are inextricably linked and intertwined because the market for HDD suspension assemblies exists to serve the HDD market. Without the HDDs, the HDD suspension assemblies have little to no value because they have no independent

utility.

73.   HDD suspension assemblies are identifiable, discrete physical products that remain essentially unchanged when incorporated into an HDD. As a result, HDD suspension assemblies follow a traceable physical chain of distribution from Defendants to Plaintiff and the members of the Classes, and costs attributable to HDD suspension assemblies can be traced through the chain of distribution to Plaintiff and the members of the Classes.

74.   Just as HDD suspension assemblies can be physically traced through the supply chain, so can their prices be traced to show that changes in the prices paid by direct purchasers of HDD suspension assemblies affect prices paid by indirect purchasers for HDDs containing HDD suspension assemblies.

75.   While even a monopolist would increase its prices when the cost of its inputs increased, the economic necessity of passing through cost changes increases with the degree of competition a firm faces.

76.   The economic and legal literature has recognized that unlawful overcharges in a component normally result in higher prices for products containing that price-fixed component. Two antitrust scholars – Professors Robert G. Harris (Professor Emeritus and former Chair of the Business and Public Policy Group at the Haas School of Business at the University of California at Berkeley)

and the late Lawrence A. Sullivan (Professor of Law Emeritus at Southwestern Law School and author of the Handbook of the Law of Antitrust) – have observed that "in a multiple-level chain of distribution, passing on monopoly overcharges is not the exception: it is the rule."

77.    The purpose of the conspiratorial conduct of Defendants and their co-conspirators was to raise, fix, rig or stabilize the price of HDD suspension assemblies and, as a direct and foreseeable result, the price of products containing HDD suspension assemblies. Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously. That analysis - called regression analysis - is commonly used in the real world and in litigation to determine the impact of a price increase on one cost in a product (or service) that is an assemblage of costs. Thus, it is possible to isolate and identify only the impact of an increase in the price of HDD suspension assemblies on  prices  for products  containing  HDD suspension  assemblies  even though such products contain a number of other components whose prices may be changing over time. A regression model can explain how variation in the price of HDD suspension assemblies affects changes in the price of assembled products, such as computers. In such models, the price

of HDD suspension assemblies would be treated as an independent or explanatory variable. The model can isolate how changes in the price of HDD suspension assemblies impact the price of products containing HDD suspension assemblies while controlling for the impact of other price-determining factors.

78.    The precise amount of the overcharge impacting the prices of products containing HDD suspension assemblies can be measured and quantified. Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed through the chain of distribution. Thus, the economic harm to Plaintiff and class members can be quantified.

79.    By reason of the violations of the antitrust law alleged herein, Plaintiff and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for HDD suspension assemblies than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## PLAINTIFF' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

### A.    Defendants Have Engaged in a Continuing Violation

80.   Plaintiff repeats and re-alleges the allegations set forth above.

81.   Plaintiff and members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein.

82.   Plaintiff and members of the Classes purchased HDDs containing HDD assemblies for their own use and not for resale. No information in the public domain was available to Plaintiff and members of the Classes prior to July 26, 2016.  Moreover, Plaintiff and members of the Classes had no direct contact or interaction with Defendants and had no means from which they could have discovered that Defendants were engaged in the conspiracy combination and conspiracy alleged herein before July 26, 2016.

83.   This Complaint alleges a continuing course of conduct (including conduct within the applicable limitations periods), and Defendants' unlawful conduct has inflicted continuing and accumulating harm within the applicable statutes of limitations.

84.   Each time Defendants engaged in an unlawful act complained of here, Defendants undertook an overt act that has inflicted harm on Plaintiff and other members of the Classes.

85.   Because Defendants have engaged in a continuing course of conduct,

Plaintiff's claims are timely.

**B.**    **Fraudulent Concealment Tolled the Statute of Limitations**

86.    The doctrine of fraudulent concealment also tolls the statute of limitations on the claims asserted herein by Plaintiff and the Classes.  Plaintiff and members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until July 26, 2016, the date that the JFTC's raid on Defendants TDK and NHK became public.

87.    Before that time, Plaintiff and members of the Classes were unaware of Defendants' unlawful conduct and did not know that they were paying supra-competitive prices for HDD suspension assemblies throughout the United States during the Class Period.  No information, actual or constructive, was ever made available to Plaintiff and members of the Classes that even hinted to Plaintiff that they were being injured by Defendants' unlawful conduct.

88.    By its very nature, Defendants' and their co-conspirators' anticompetitive conspiracy was inherently self-concealing. HDD suspension assemblies are not exempt from antitrust regulation and, thus, Plaintiff and members of the Classes reasonably considered the HDD suspension assemblies industry to be a competitive industry.  Accordingly, a reasonable person under the

circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' HDD suspension assemblies prices before July 26, 2016, the date of the JFTC raid.

89.  Because the alleged conspiracy was self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiff and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until July 26, 2016.

90.  For these reasons, the statute of limitations applicable to Plaintiff' and the Classes' claims was tolled and did not begin to run until July 26, 2016.

## II.  VIOLATIONS ALLEGED

### FIRST CLAIM FOR RELIEF
**Violation of Section 1 of the Sherman Act**
**(on behalf of Plaintiff and**
**the Nationwide Class)**

91.  Plaintiff incorporates by reference the allegations in the preceding paragraphs.

92.  Defendants and unnamed co-conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

93.  The acts done by Defendants as part of, and in furtherance of, their

and their co-conspirators' contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of their affairs.

94.    During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for HDD suspension assemblies, thereby creating anticompetitive effects.

95.    The anticompetitive acts were intentionally directed at the United States market for HDD suspension assemblies and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for HDD suspension assemblies throughout the United States.

96.    The conspiratorial acts and combinations have caused unreasonable restraints in the markets for HDD suspension assemblies.

97.    As a result of Defendants' unlawful conduct, Plaintiff and other similarly situated indirect purchasers in the Nationwide Class who purchased HDD suspension assemblies have been harmed by being forced to pay inflated, supra- competitive prices for HDD suspension assemblies.

98.    In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they

combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

99. Defendants' conspiracy had the following effects, among others:

    a. Price competition in the market for HDD suspension assemblies has been restrained, suppressed, and/or eliminated in the United States;

    b. Prices for HDD suspension assemblies sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

    c. Plaintiff and members of the Nationwide Class who purchased HDD suspension assemblies indirectly from Defendants and their co- conspirators have been deprived of the benefits of free and open competition.

100. Plaintiff and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for HDD suspension assemblies purchased indirectly from Defendants and their co-conspirators than they would have paid and will pay in the absence of the conspiracy.

101. The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

102. Plaintiff and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## SECOND CLAIM FOR RELIEF
### Violation of State Antitrust Statutes
### (on behalf of Plaintiff and the Damages Class)

103. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

104. During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of HDD suspension assemblies in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

105. The contract, combination, or conspiracy consisted of an agreement among Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive levels the prices for HDD suspension assemblies and to allocate customers for these products in the United States.

106. In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

a.    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price HDD suspension assemblies at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiff  and members of the Damages Class with respect to HDD suspension assemblies sold in the United States;

b.    allocating customers and markets for HDD suspension assemblies in the United States in furtherance of their agreements; and

c.    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

107. Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate customers with respect to HDD suspension assemblies.

108. Defendants' anticompetitive acts described above were knowing and

willful and constitute violations or flagrant violations of the following state antitrust statutes.

109. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq.*

      a.     Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Arizona; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

      b.     During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

      c.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

      d.     By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

110. Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq*.

      a.     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. Defendants, each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, HDD suspension assemblies at supra-competitive levels.

      b.     The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among Defendants and their co- conspirators, the substantial terms of which were to fix, raise,

maintain, and stabilize the prices of, and to allocate markets for, HDD suspension assemblies.

c.    For the purpose of forming and effectuating the unlawful trust, Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and the following: (1) Fixing, raising, stabilizing, and pegging the price of HDD suspension assemblies; and (2) Allocating among themselves the production of HDD suspension assemblies.

d.    The combination and conspiracy alleged herein has had, *inter alia*, the following effects: (1) Price competition in the sale of HDD suspension assemblies has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for HDD suspension assemblies sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) Those who purchased HDD suspension assemblies directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

e.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property in that they paid more for HDD suspension assemblies than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiff and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

111. Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code Annotated §§ 28-4501, *et seq.*

a.    Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) HDD suspension assemblies prices were raised,  fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially

45

inflated prices for HDD suspension assemblies.

b.      During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

112. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq.*

a.      Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Iowa; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiff and

members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.      During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

113. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq*.

a.      Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Kansas;    (2)

47

HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.      During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50- 101, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

114. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

a.      Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Maine; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.      During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann.

49

10, §§ 1101, *et seq.*

115. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

      a.    Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Michigan; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

      b.    During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

      c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

      d.    By reason of the foregoing, Defendants have entered into

agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq*.

116. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq*.

a.     Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.     During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

c.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been

injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq*.

117. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq*.

a.    Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct

52

substantially affected Mississippi commerce.

    c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §§ 75-21-1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Mississippi Code Ann. §§ 75-21-1, *et seq.*

118. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq*.

    a.    Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid

supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.      During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

119. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

a.      Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Nevada; (2) HDD suspension assemblies prices were raised, fixed, maintained and

stabilized at artificially high levels throughout Nevada; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

120. Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq*.

a.    Defendants' combinations or conspiracies had the

following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.     During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

c.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq*.

121. Defendants have entered into an unlawful agreement in restraint of

trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq*.

       a.    Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Classpaid supra-competitive, artificially inflated prices for HDD suspension assemblies.

       b.    During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

       c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

       d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Mexico Stat. Ann.

§§ 57-1-1, *et seq*.

122. Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq*.

  a. Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout New York; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies when they purchased HDDs containing HDD suspension assemblies.

  b. During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

  c. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

  d. By reason of the foregoing, Defendants have entered into

agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq*. The conduct set forth above is a *per se* violation of the Act. Accordingly, Plaintiff and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq*.

123. Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq*.

      a.    Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

      b.    During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.

      c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been

injured in their business and property and are threatened with further injury.

     d.   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq*.

124. Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq*.

     a.   Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

     b.   During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

125. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq*.

a.    Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Oregon; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

61

b.      During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq*.

126. Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1, *et seq*.

a.      Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages

Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq*.

127. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq*.

a.    Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3)

Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.      During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25- 101, *et seq.*

128. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-3101, *et seq.*

a.      Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Utah; (2)

64

HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-3101, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-3101, *et seq.*

129. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq.*

a.    Defendants' combinations or conspiracies had the

following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Vermont; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b. During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq*.

130. Defendants have entered into an unlawful agreement in restraint of

trade in violation of the West Virginia Code §§ 47-18-1, *et seq*.

a.    Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under West Virginia Code §§

67

47-18-1, *et seq.*

131. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01*, et seq.*

    a.    Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) HDD suspension assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

    b.    During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

    c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§

133.01, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq*.

132. Plaintiff and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy and agreement. Plaintiff and members of the Damages Class have paid more for HDD suspension assemblies than they otherwise would have paid in the absence of Defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

133. In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of the Plaintiff and the members of the Damages Class.

134. Accordingly, Plaintiff and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

**THIRD CLAIM FOR RELIEF**
**Violation of State Consumer Protection**
**Statutes (on behalf of Plaintiff and the**
**Damages Class)**

135. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

136. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

137. Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101, *et seq.*

    a.    Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

    b.    The aforementioned conduct on the part of Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

    c.    Defendants' unlawful conduct had the following effects:

(1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiff and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

      d.    During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

      e.    As a direct and proximate result of the unlawful conduct of Defendants, Plaintiff and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

      f.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

138. Defendants have engaged in unfair competition or unfair,

unconscionable, deceptive or fraudulent acts or practices in violation of California

Business and Professions Code § 17200, et seq.:

a.    During the Class Period, Defendants marketed, sold, or distributed HDD suspension assemblies in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

b.    This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

c.    Defendants' conduct as alleged herein violates Section 17200.  The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set

forth above; (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above;

d. Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq*., of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

e. Defendants' acts or practices are unfair to consumers of HDD suspension assemblies (or products containing them) in the State of California within the meaning of Section 17200, California Business and Professions Code;

f. Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code;

g. Plaintiff and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices;

h. The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into

the future;

i.    The unlawful and unfair business practices of Defendants, each of them, have caused and continue to cause Plaintiff and the members of the Damages Class to pay supra-competitive and artificially-inflated prices for HDD suspension assemblies (or products containing them). Plaintiff and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

j.    The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

k.    As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiff and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

74

139. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*

> a. Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed or obtained in the District of Columbia.

> b. The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904. Plaintiff were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for HDD suspension assemblies. Defendants had the sole power to set that price and Plaintiff had no power to negotiate a lower price. Moreover, Plaintiff lacked any meaningful choice in purchasing HDD suspension assemblies because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiff could avoid the overcharges. Defendants'

conduct with regard to sales of    HDD suspension assemblies, including their illegal conspiracy to secretly fix the price of HDD suspension assemblies at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiff and the public. Defendants took grossly unfair advantage of Plaintiff. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for HDD suspension assemblies.

c.    Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and the Damages Class were deprived of free and open competition; and (4) Plaintiff and the Damages Class paid supra- competitive, artificially inflated prices for HDD suspension assemblies.

d.    As a direct and proximate result of Defendants' unlawful

conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

140. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

a.     Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Florida; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.     During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

d.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

141. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq*.

a.    Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct

substantially affected Hawaii commerce and consumers.

      c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

      d.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. § 480, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

142. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Mass. G.L. c. 93A, §2.

      a.    Defendants were engaged in trade or commerce as defined  by G.L. c. 93A.

      b.    Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

79

c.    Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

d.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class were injured and are threatened with further injury.

e.    Certain of Defendants have or will be served with a demand letter in accordance with G.L. c. 93A, § 9, or, upon information and belief, such service of a demand letter was unnecessary due to the defendant not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth.

f.    By reason of the foregoing, Defendants engaged in unfair competition and unfair or deceptive acts or practices, in violation  of

G.L. c. 93A, §2. Defendants' and their co-conspirators' violations of Chapter 93A were knowing or willful, entitling Plaintiff and members of the Damages Class to multiple damages.

143. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*

    a.    Plaintiff and the Damages Class purchased HDD suspension assemblies for personal, family, or household purposes.

    b.    Defendants engaged in the conduct described herein in connection with the sale of HDD suspension assemblies in trade or commerce in a market that includes Missouri.

    c.    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of the Damages Class.

    d.    Defendants concealed, suppressed, and omitted to

disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD suspension assemblies. The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of HDD suspension assemblies they purchased.

e.    Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD suspension assemblies by making public statements that were not in accord with the facts.

f.    Defendants' statements and conduct concerning the price of HDD suspension assemblies were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing HDD suspension assemblies at prices established by a free and fair market.

g.    Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Missouri; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiff

and members of the Damages Class were deprived of free and open competition; and  (4) Plaintiff and members of the Damages Class paid supra- competitive, artificially inflated prices for HDD suspension assemblies.

h.    The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

i.    As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property.

j.    Accordingly, Plaintiff and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

144. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Consumer Protection Act of 1973, Mont. Code, §§ 30-14-101, *et seq*.

        a.    Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Montana; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra- competitive, artificially inflated prices for HDD suspension assemblies.

        b.    During the Class Period, Defendants' illegal conduct substantially affected Montana commerce and consumers.

        c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

        d.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-101, *et seq*., and, accordingly, Plaintiff and members of the Damages

Class seek all relief available under that statute.

145. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq*.

> a.    Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated   levels, the prices at which HDD suspension assemblies were sold, distributed or obtained in New Mexico and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

> b.    The aforementioned conduct on the part of Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, *inter alia*, resulted in a gross disparity between the value received by Plaintiff and the members of the Damages Class and the prices paid by them for HDD suspension assemblies as set forth in N.M.S.A., § 57-12-2E. Plaintiff were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally

overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for HDD suspension assemblies. Defendants had the sole power to set that price and Plaintiff had no power to negotiate a lower price. Moreover, Plaintiff lacked any meaningful choice in purchasing HDD suspension assemblies because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiff' could avoid the overcharges. Defendants' conduct with regard to sales of HDD suspension assemblies, including their illegal conspiracy to secretly fix the price of HDD suspension assemblies at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiff and the public. Defendants took grossly unfair advantage of Plaintiff. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for HDD suspension assemblies.

      c.    Defendants' unlawful conduct had the following effects:

(1) HDD suspension assemblies price competition was restrained,

suppressed, and eliminated throughout New Mexico; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

d.    During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

e.    As a direct and proximate result of the unlawful conduct of Defendants, Plaintiff and the members of the Damages Class have been injured and are threatened with further injury.

f.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

146. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

a.    Defendants agreed to, and did in fact, act in restraint of

87

trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

b.    Defendants and their co-conspirators made public statements about the prices of HDD suspension assemblies and products containing HDD suspension assemblies that Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for HDD suspension assemblies and products containing HDD suspension assemblies; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

c.    Because of Defendants' unlawful trade practices in the State of New York, New York consumer class members who indirectly purchased HDD suspension assemblies were misled to believe that they were paying a fair price for HDD suspension assemblies or the price increases for HDD suspension assemblies

88

were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conspiracy.

      d.    Defendants knew that their unlawful trade practices with respect to pricing HDD suspension assemblies would have an impact on New York consumers and not just Defendants' direct customers.

      e.    Defendants knew that their unlawful trade practices with respect to pricing HDD suspension assemblies would have a broad impact, causing consumer class members who indirectly purchased HDD suspension assemblies to be injured by paying more for HDD suspension assemblies than they would have paid in the absence of Defendants' unlawful trade acts and practices.

      f.    The conduct of Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

      g.    Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout New York; (2) HDD

89

suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra- competitive, artificially inflated prices for HDD suspension assemblies.

h.    During the Class Period, Defendants' marketed, sold, or distributed HDD suspension assemblies in New York, and Defendants' illegal conduct substantially affected New York commerce and consumers.

i.    During the Class Period, each of Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed HDD suspension assemblies in New York.

j.    Plaintiff and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

147. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq*.

b.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

c.     Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and  self-concealing actions, of which     Plaintiff could not possibly have been aware. Defendants and their co- conspirators publicly provided pre-textual and false justifications regarding their price increases. Defendants' public statements concerning the price of HDD suspension assemblies created the illusion of competitive pricing controlled by market forces rather than supra- competitive pricing driven by Defendants' illegal conspiracy. Moreover, Defendants deceptively concealed their unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders, conducting meetings and

conversations in secret, confining the plan to a small group of higher-level officials at each company and avoiding the creation of documents which would reveal the antitrust violations.

    d.    The conduct of Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

    e.    Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

    f.    During the Class Period, Defendants' marketed, sold, or distributed HDD suspension assemblies in North Carolina, and

Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

g.    During the Class Period, each of Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed HDD suspension assemblies in North Carolina.

h.    Plaintiff and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

148. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

a.    Members of this Damages Class purchased HDD suspension assemblies for personal, family, or household purposes.

c.    Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Rhode Island.

d.    Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD suspension assemblies. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non- business consumer, Defendants breached that duty by their silence. Defendants misrepresented to all consumers during the Class    Period that Defendants' HDD suspension assemblies prices were competitive and fair.

e.    Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiff and members of the Damages Class were deprived of free

and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

f.      As a direct and proximate result of Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

g.      Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of HDD suspension assemblies, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing HDD suspension assemblies at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiff and members of the Damages Class as they related to the cost of HDD suspension assemblies they purchased.

h.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws.

§ 6- 13.1-1, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

149. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*

a.    Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.*, and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

150. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, et seq.:

a.     Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Vermont.

b.     Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning their unlawful activities and artificially inflated prices for HDD suspension assemblies. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non- business purchaser, Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the

Class Period that their HDD suspension assemblies prices were competitive and fair.

c.    Defendants' unlawful conduct had the following effects: (1) HDD suspension assemblies price competition was restrained, suppressed, and eliminated throughout Vermont; (2) HDD suspension assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra- competitive, artificially inflated prices for HDD suspension assemblies.

d.    As a direct and proximate result of Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices  as  set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

e.    Defendants' deception, including their omissions concerning the price of HDD suspension assemblies, likely misled all purchasers acting reasonably under the circumstances to believe

that they were purchasing HDD suspension assemblies at prices born by a free and fair market. Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

### FOURTH CLAIM FOR RELIEF
### Unjust Enrichment
### (on behalf of Plaintiff and the Damages Class)

151. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

152. Plaintiff bring this claim under the laws of all states listed in the Second and Third Claims, *supra*.

153. As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of HDD suspension assemblies.

154. Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiff of the members of the Damages Class for HDD suspension assemblies.

155. Plaintiff and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiff and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiff and the members of the Damages Class may make claims on a pro rata basis.

156. Pursuit of any remedies against the firms from which Plaintiff and the members of the Damages Class purchased HDDs containing HDD suspension assemblies subject to Defendants' conspiracy would have been futile.

## **PRAYER FOR RELIEF**

Accordingly, Plaintiff respectfully request that:

157. The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

158. That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a)    An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)    A *per se* violation of Section 1 of the Sherman Act;

(c)    An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

(d)    Acts of unjust enrichment by Defendants as set forth herein.

159. Plaintiff and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiff and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

160. Plaintiff and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

161. Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or

101

from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

162. Plaintiff and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

163. Plaintiff and the members of the Classes be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

164. Plaintiff and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

165. Plaintiff and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury, pursuant to Federal Rule of Civil Procedure 38(b), of all issues so triable.

Dated: September 3, 2019                */s/  Garrett D. Blanchfield*

                                **REINHARDT WENDORF &
                                BLANCHFIELD**
                                Mark Reinhardt (#90530)
                                Garrett D. Blanchfield (#209855)

102

Brant D. Penney (#316878)
E-1250 First National Bank Building
332 Minnesota Street
St. Paul, MN 55101
Telephone: (651) 287-2100
m.reinhardt@rwblawfirm.com
g.blanchfield@rwblawfirm.com
b.penney@rwblawfirm.com

*Attorneys for Plaintiff and the Proposed
Indirect Purchaser Classes*